UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOUCH HOLDING COMPANY                                    CIVIL ACTION

VERSUS                                                   NO. 15-5711

COPELAND'S CHEESECAKE BISTRO, L.L.C.                     SECTION A(4)

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 35)** filed by

Plaintiff/Couterclaim-Defendant   Touch   Holding   Company   ("Touch   Holding").

Defendant/Counterclaim-Plaintiff Copeland's Cheesecake Bistro, LLC ("Copeland's") opposes

the motion. The motion, set for submission on August 10, 2016, is before the Court on the briefs

without oral argument. This matter is set for a bench trial beginning October 3, 2016.

**I.      Background**

This suit is based on business dealings between Touch Holding and Copeland's. In May

2011, Touch Holding and Copeland's began discussions about Touch Holding opening Copeland's

Cheesecake Bistro restaurant in six countries. (Rec. Doc. 1 at 2). In an initial email between the

parties, Waleed Alsayegh, the owner of Touch Holding, emphasized to Copeland's Andrew

Gunkler that they needed to act quickly in opening the restaurants, in order to beat a competing

restaurant. (Rec. Doc. 37-1 at 10). Shortly thereafter, Copeland's prepared a "Letter of Interest,"

in which it offered to sell certain rights to Touch Holding and proposed fees for these rights. (Rec.

Doc. 12-1). In the letter, Copeland's required Touch Holding to pay a "Good Faith Deposit": "A

Good Faith Deposit of one hundred thousand dollars ($100,000 U.S.) to be paid upon acceptance

of this proposal. Balance of upfront fees to be paid upon execution of Master Franchise

Agreement." (Rec. Doc. 35-5).

The parties executed the letter, and Touch Holding wired $100,000 to Copeland's. (Rec. Doc. 37-1 at 20). Notably, on May 25, 2011, Alsayegh emailed Gunkler, asking if he could send "an invoice for the $100k down payment along with your bank details." (*Id.* at 21). Days later, on June 4, 2011, Alsayegh emailed Gunkler saying the restaurant would need to carry at least 45 flavors of cheesecake and telling Gunkler that "you guys can work on adding flavors starting from now." (*Id.* at 19). He said Touch Holding would work on securing the best location for the first store. (*Id.*) On June 16, 2011, Gunkler emailed Jason Dsouza with Touch Holding. (*Id.* at 23-24). Gunkler reported progress on the menu and on "purchasing/distribution." (*Id.*)

By October 2011, the parties were unable to agree on the final terms of the transaction. (Rec. Doc. 35-1). Touch Holding demanded a return of the $100,000, and Copeland's refused to return it. (*Id.*) On November 4, 2015, Touch Holding filed suit, alleging breach of contract or, alternatively, enrichment without cause. (Rec. Doc. 1). Copeland's has asserted counterclaims and affirmative defenses of promissory estoppel and detrimental reliance, negligent misrepresentation, and intentional misrepresentation. (Rec. Doc. 21).

## II.    Analysis

In the instant motion, Touch Holding seeks the returns of the $100,000. Touch Holding argues that because the parties did not designate the payment as "earnest money," the payment is a deposit, which is refundable. Touch Holding further argues that there is no genuine issue as to any material fact on Copeland's counterclaim for promissory estoppel and detrimental reliance, as there is no evidence that Touch Holding ever made any promises or represented that it had agreed to the version of the Master Franchise Agreement proposed by Copeland's.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the

light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

Touch Holding relies on Louisiana Civil Code Article 2624, which provides as follows:

> A sum given by the buyer to the seller in connection with a contract to sell is regarded to be a deposit on account of the price, unless the parties have expressly provided otherwise.

> If the parties stipulate that a sum given by the buyer to the seller is earnest money, either party may recede from the contract, but the buyer who chooses to recede must forfeit the earnest money, and the seller who so chooses must return the earnest money plus an equal amount.

Courts applying and interpreting Article 2624 have held that, when a payment is not designated as "earnest money," it is a deposit and therefore refundable. *See e.g., Robar v. Jones*, 176 So.3d 1087 (La. App. 3d Cir. 2015). Cases applying Article 2624, however, generally involve real estate sales. *See e.g., id.*; *Worley v. Chandler*, 7 So.3d 38 (La. App. 2d Cir. 2009). In this context, as Defendant notes, once a purchase price is established and a deposit tendered, the prospective seller does little

more than remove the property from the market while the purchaser completes his due diligence and perhaps obtains financing. For example, in *Robar*, once the parties agreed on a purchase price, the buyer gave the seller a check and asked that she hold the check. *Robar*, 176 So.3d at 1088. There is no indication that, upon receiving the check, the seller did anything more than remove a "For Sale" sign and inform a potential lessor that the property was no longer available. *See id.*

The instant case involves a much different context, as the parties were working toward a franchise agreement. As indicated in the regulations, a franchisor "will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operations." 16 C.F.R. § 436.1(h)(2). Thus, the relationship between the contracting parties here differs greatly from the relationship between a potential real estate seller and buyer. In light of this difference, the Court will not apply Article 2624's jurisprudence to the instant case.

The parties agree that their Letter of Intent constitutes an act of private signature. Louisiana Civil Code Article 1848 states, "Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature." Under Louisiana law, however, "when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties." *Brandner v. Staf-Rath, L.L.C.*, 64 So.3d 812 (La. App. 5th Cir. 4/26/11), *writ denied*, 68 So.3d 523 (La. 2011).

The Court finds that the intention of the parties regarding the $100,000 payment cannot be ascertained from the language of the Letter of Intent. The language does not state whether the payment is refundable or non-refundable. The contract first refers to the payment as a deposit, but

the sentence immediately following this language suggests differently. The sentence provides that the "balance of upfront fees" will be paid at a later date. Referring to a balance, or remainder, or upfront fees suggests that this $100,000 payment is the first of a number of "upfront fees." Further, in an email, Alsayegh referred to the $100,000 as a "down payment." Using the term "down payment" suggests that this payment is part of a larger full price, the balance of which will be paid at a later date. The court finds that the dispute over the payment and whether it is refundable constitutes a genuine dispute about a material fact. Thus, summary judgment is precluded.

Touch Holding also seeks summary judgment in its favor on Copeland's counterclaim for promissory estoppel and detrimental reliance. In support of its argument, Touch Holding asserts that there is no evidence that Touch Holding made promises or represented that it had agreed to the version of the Master Franchise Agreement proposed to by Copeland's.

Louisiana Civil Code Article 1967 provides as follows:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

A party is entitled to recover damages when he proves three elements by a preponderance of the evidence: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005) (citing *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 871 So.2d 380, 393 (La. App. 4th Cir. 2004), *writ denied*, 876 So.2d 834 (La. 2004)).

The Court finds that Touch Holding has not met its burden of showing that there is an absence of evidence to support Copeland's cause. Instead, when viewing the evidence in the light most favorable to Copeland's, the non-movant, the evidence demonstrates that Touch Holding

may have made representations via email that induced a "justifiable reliance" by Copeland's. Copeland's further asserts that because of Touch Holding's representations, Copeland's spent money developing menu items, preparing paperwork for trademark protection, arranging supply chain logistics, and working on restaurant designs. Specifically, Copeland's claims that it spent $41,000 on recipe development, $15,000 in administrative expenses and corporate overhead, and $59,776 in fees and expenses to register trademarks and prepare international franchise documents.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 35)** is **DENIED**;

**IT IS FURTHER ORDERED** that a telephone conference is **SET** for **Monday, August 15, 2016, at 11:00 a.m.**

New Orleans, Louisiana, this 12th day of August, 2016

_____

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE